EXHIBIT "A"

**LIBERTY GLOBAL LOGISTICS LLC**
**OCEAN BILL OF LADING**

| Shipper (Complete Name and Address) | | Bill of Lading No. |
|---|---|---|
| MD AUTO SALES INC.<br>7250 EAST COLONIAL DR.<br>ORLANDO, FLORIDA 32807<br>UNITED STATES<br>Tel: 407-381-0001 | | LGLTF1BALJED001<br>**Export References**<br>6077<br>**Carrier Bkg Ref**<br>2012BAL2697 |
| **Consignee (Complete Name and Address)**<br>NAJE SALEM BAGENAD ESTABLISHMENT<br>AL QAWHRA ST.<br>JEDDAH, SAUDI ARABIA<br>SAUDI ARABIA<br>Tel: 569717389 | | **Forwarding Agent - References**<br>INTERNATIONAL EXPRESS SHIPPING, INC.<br>3625 GATLIN PLACE CIRCLE<br>ORLANDO, UNITED STATES 32812<br>UNITED STATES<br>Tel: 866-982-2311 |
| | | **Point and country of Origin of Goods**<br>United States |
| **Notify Party (Complete Name and Address)**<br>Same As Above | | **Domestic Routing / Export Instructions (Additional Notify Party, Etc)**<br><br>DRAFT |
| **Pre-Carriage By**<br>None | **Place of Receipt**<br>Baltimore, MD | |
| **Vessel/Voyage No.**<br>STX Flamingo V.1 | **Port of Loading**<br>Baltimore, MD | **Onward Inland Routing** |
| **Port of Discharge**<br>Jeddah, Saudi Arabia | **For Transshipment To** | |

| Marks and Numbers | No. of Pkgs | Description of Packages and Goods | | | Gross Weight (KGS) | Measurement (CBM) |
|---|---|---|---|---|---|---|
| 529211973 | 1 | 2006 | BOBCAT | S130 STEER LOADER | 2,037 | 7.99 |
| | | AES ITN: | X20121117000762 | Total: 1 | 2,037.21 | 7.99 |

| Freight & Charges<br>FREIGHT COLLECT | Service Type | Unit of Measure | Quantity | Rate | Pre Paid | Freight Collect |
|---|---|---|---|---|---|---|
| | | | | | | |

| Freight and Charges Payable At | Number of Originals BL(s)<br>Three (3) | Place BL(s) Issue<br>Lake Success, NY | LIBERTY GLOBAL LOGISTICS LLC |
|---|---|---|---|
| **Dated** December 27, 2012 | Laden on Board the Vessel<br>By: LIBERTY GLOBAL LOGISTICS, LLC. | | |

# LIBERTY GLOBAL LOGISTICS
## BILL OF LADING
### *Terms and conditions of carriage*

**1. Definitions.**

"*Merchant*" includes the shipper, the receiver, the consignor, the consignee, the holder of the Bill of Lading, the owner of the cargo and any person entitled to possession of the cargo an anyone acting on behalf of such Person.
"*Carrier*" means Liberty Global Logistics, LLC of 1979 Marcus Avenue, Suite 200, Lake Success, New York 11042.

**2. Incorporation of Tariff.**

This Bill of Lading is issued subject to the terms and conditions of the Carrier's tariff and such terms and conditions are incorporated herein as if fully set forth in this Bill of Lading. Copies of the relevant provisions of the tariff are obtainable from the Carrier upon request. In the case of any inconsistency between this bill of lading and the tariff, this Bill of Lading shall prevail.

**3. Notification.**

Any mention in this Bill of Lading of parties to be notified of the arrival of the cargo is solely for the information of the Carrier and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.

**4. Declaration of Value.**

Without limitation to the terms and conditions of the tariff:
UNLESS THE NATURE AND VALUE OF THE CARGO HAS BEEN DECLARED BY THE SHIPPER BEFORE THE CARGO HAS BEEN HANDED OVER TO THE CARRIER AND INSERTED IN THIS BILL OF LADING, THE CARRIER SHALL IN NO EVENT BE OR BECOME LIABLE FOR ANY LOSS OR DAMAGE TO THE CARGO IN AN AMOUNT EXCEEDING USD 500 PER PACKAGE, OR, WHERE THE HAGUE RULES MAY APPLY.

**5. Law and Jurisdiction.**

Disputes arising out of or in connection with this Bill of Lading shall be governed by United States maritime law. THE PARTIES HERETO EXPRESSLY AGREE AND SUBMIT TO THE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK WHICH SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR ALL DISPUTES IN RESPECT OF THE TRANSPORTATION GOVERNED BY THIS BILL OF LADING.

**6. Lien.**

The Carrier shall have a lien on the Goods and any document relating thereto for any amount due under this contract and the costs of recovering the same. The Carrier's lien shall survive delivery of the Goods.

**7. Description of Goods.**

(a) This Bill of Lading shall be prima facie evidence of the receipt by the Carrier in apparent good order and condition, except as otherwise noted, of the total number of Packages indicated on the first page hereof.
(b) No representation is made by the Carrier as to the weight, contents, measure, quantity, quality, description, condition, marks, numbers or value of the Goods and the Carrier shall be under no responsibility whatsoever in respect of such description or particulars.
(c) The Merchant warrants to the Carrier that the particulars relating to the Goods as set out on the reverse hereof have been checked by the Shipper on receipt of this Bill of Lading and that such particulars, and any other particulars furnished by or on behalf of the Shipper, are adequate and correct. The Shipper also warrants that the Goods are lawful goods, and contain no contraband, drugs, other illegal substances or stowaways, and that the Goods will not cause loss damage or expense to the Carrier, or to any other cargo during the Carriage.
(d) If any particulars of any Letter of Credit and/or Import License and/or Sales Contract and/or Invoice or Order number and/or details of any contract to which the Carrier is not a party, are shown on the face of this Bill of Lading, such particulars are included at the sole risk of the Merchant and for his convenience. The Merchant agrees that the inclusion of such particulars shall not be regarded as a declaration of value and in no way increases Carrier's liability under this Bill of Lading.

**8. Dangerous Goods.**

(a) No hazardous or dangerous Goods (as defined more fully in the tariff) shall be tendered to the Carrier for Carriage without previously giving written notice of their nature, character, name, label and classification (if applicable) to the Carrier and obtaining his consent in writing and without distinctly marking the Goods and the Container or other covering on the outside so as to indicate the nature and character of any such Goods and so as to comply with any applicable laws, regulations or requirements.
(b) The Merchant warrants that such Goods are packed in a manner adequate to withstand the risks of Carriage having regard to their nature and in compliance with all applicable laws, regulations or requirements.

**9. Inspection of Goods.**

The Carrier shall be entitled, but under no obligation, to open and/or scan any Package or Container at any time and to inspect the contents and to exercise such other rights as permitted under the tariff. The Merchant shall indemnify the Carrier against any reasonable additional expenses so incurred. The Carrier in exercising such liberties shall not be under any obligation to take any particular measures and shall not be liable for any loss, delay or damage howsoever arising from any action or lack of action under this clause.

**10. Variation of the Contract.**

No servant or agent of the Carrier shall have the power to waive or vary any terms and conditions of this Bill of Lading unless such waiver or variation is in writing and is specifically authorized or ratified in writing by the Carrier.

EXHIBIT "B"

To: STX Pan Ocean Co. Ltd. for POS Maritime CB SA (Owners)
To: Hyundai Glovis Co., Ltd. (Head Charterer)

Re: "STX FLAMINGO"
Shifting Damage – Vehicles/Equipment
At Wilmington, DE, USA – 1 January 2013

Dear Sirs:

As you are aware, on 30 December 2012 the Master of the STX FLAMINGO reported that the vessel and its cargo sustained damage at sea and that the vessel damage would return to the last load port of Wilmington, Delaware, USA from its then current position of 37°-27'N, 065°-39W. The vessel arrived at Wilmington at approximately 19:00 LT on 1 January 2013.

In the circumstances, space charterer Liberty Global Logistics, LLC hereby demands that you take all necessary steps to insure that the evidence listed below is preserved indefinitely and that copies of all such evidence be made available to Liberty Global Logistics, LLC as soon as possible.

Any and all electronically-stored data, information or communications must be preserved in its original electronic format.

### REQUESTED DOCUMENTS

1. Vessel Particulars
2. Crew List
3. Deck Logs – rough and smooth for entire voyage
4. Engine Logs – rough and smooth for entire voyage
5. Bridge Logs – rough and smooth for entire voyage
6. Chief Mate's Cargo Records for entire voyage
7. Cargo Stowage Plan for current voyage
8. Weather routing information or communications
9. Weather Reports
10. Noon position reports
11. Departure report
12. Position Log
13. Charts used from Departure Wilmington until Arrival Wilmington
14. Voyage Data Recorder electronic data from the time of departure Wilmington to the vessel's arrival at Wilmington on 1 January.
15. Bell Book and/or Data Loggers for Bridge and Engine Telegraph Orders
16. Course Recorder Records for Voyage
17. Notices of Readiness tendered at load ports
18. Statement of Facts for each load port
19. Any US Customs Service Cargo Declaration
20. Load port Stevedore / Labor Reports for load ports

PBH396531.1

STX FLAMINGO
Vessel Document List
Page 2

21. Preloading Survey Reports
22. Lashing material inventory
23. Lashing material inspection reports
24. Lashing material record book
25. Any and all written communications to or from the Vessel relating to or made during the voyage
26. All records relating to any vessel stabilization system including operating manuals and maintenance and repair records for six month prior to the incident.
27. Any photographs taken by the crew during the voyage.
28. SMS Manuals
29. ISM Manuals
30. All maintenance and repair records related to main engine for the six month period prior to the incident.
31. All ISM non-conformity reports issued for this vessel for the past year.
33. Ships' General Arrangement Plan
34. IMO approved Cargo Securing Manual
35. Lashing Certificates
36. Voyage/Passage Plan
37. Sea Protest, if any
38. Vessel Stability Calculations, Reports and Records (Electronic and hard copy)
39. Any crew notebooks containing information related to the voyage, weather or cargo damage
40. Any video recordings taken by crew or obtained by vessel during the voyage.
41. Stowage and/or lashing inspection reports.
42. Continuous Synopsis Record
43. Load Line Certificate
44. Tonnage Certificate
45. Minimum Safe Manning Document
46. Onboard Training and Drill Records
47. Record of Navigational Activities
48. Crew Rest Records
49. Licenses and Certificates for all Officers and STCW Certificates for crewmembers.
50. Voyage Data Recorder System-Certification Compliance
51. Document of Compliance
52. Safety Management Certificate
53. Main Engine Technical File
54. US Coast Guard 2692 Report and all correspondence with US Coast Guard relating to the incident.
55. Daily hold inspection reports for the voyage.
56. Ballast records for the voyage.

In addition to the foregoing documents, we hereby demand that any and all damaged lashing materials used to secure the cargo be retained indefinitely and made available for inspection.

# HDI MARINE

## MARINE & CARGO SURVEYORS

501 Cambria Avenue, Suite 222 • Bensalem, PA 19020
O: 215-352-6544 • F: 215-893-5380 • E: office@HDI-Marine.com

To: STX Pan Ocean Co. Ltd. for POS Maritime CB SA (Owners)
To: Hyundai Glovis Co., Ltd. (Head Charterer)

Re: "STX FLAMINGO"
Shifting Damage – Vehicles/Equipment
At Wilmington, DE, USA – 1 January 2013

Dear Sirs:

As you are aware, on 30 December 2012 the Master of the STX FLAMINGO reported that the vessel and its cargo sustained damage at sea and that the vessel damage would return to the last load port of Wilmington, Delaware, USA from its then current position of 37°-27'N, 065°-39W. The vessel arrived at Wilmington at approximately 19:00 LT on 1 January 2013.

In the circumstances, space charterer Liberty Global Logistics, LLC hereby demands that you take all necessary steps to insure that the evidence listed below is preserved indefinitely and that copies of all such evidence be made available to Liberty Global Logistics, LLC as soon as possible.

Any and all electronically-stored data, information or communications must be preserved in its original electronic format.

### REQUESTED DOCUMENTS

1. Vessel Particulars
2. Crew List
3. Deck Logs – rough and smooth for entire voyage
4. Engine Logs – rough and smooth for entire voyage
5. Bridge Logs – rough and smooth for entire voyage
6. Chief Mate's Cargo Records for entire voyage
7. Cargo Stowage Plan for current voyage
8. Weather routing information or communications
9. Weather Reports
10. Noon position reports
11. Departure report
12. Position Log
13. Charts used from Departure Wilmington until Arrival Wilmington
14. Voyage Data Recorder electronic data from the time of departure Wilmington to the vessel's arrival at Wilmington on 1 January.
15. Bell Book and/or Data Loggers for Bridge and Engine Telegraph Orders
16. Course Recorder Records for Voyage
17. Notices of Readiness tendered at load ports
18. Statement of Facts for each load port
19. Any US Customs Service Cargo Declaration
20. Load port Stevedore / Labor Reports for load ports STX FLAMINGO Vessel Document



**Request for documents / Preservation of Evidence**   **STX FLAMINGO**

21. Preloading Survey Reports
22. Lashing material inventory
23. Lashing material inspection reports
24. Lashing material record book
25. Any and all written communications to or from the Vessel relating to or made during the voyage
26. All records relating to any vessel stabilization system including operating manuals and maintenance and repair records for six month prior to the incident.
27. Any photographs taken by the crew during the voyage.
28. SMS Manuals
29. ISM Manuals
30. All maintenance and repair records related to main engine for the six month period prior to the incident.
31. All ISM non-conformity reports issued for this vessel for the past year.
33. Ships' General Arrangement Plan
34. IMO approved Cargo Securing Manual
35. Lashing Certificates
36. Voyage/Passage Plan
37. Sea Protest, if any
38. Vessel Stability Calculations, Reports and Records (Electronic and hard copy)
39. Any crew notebooks containing information related to the voyage, weather or cargo damage
40. Any video recordings taken by crew or obtained by vessel during the voyage.
41. Stowage and/or lashing inspection reports.
42. Continuous Synopsis Record
43. Load Line Certificate
44. Tonnage Certificate
45. Minimum Safe Manning Document
46. Onboard Training and Drill Records
47. Record of Navigational Activities
48. Crew Rest Records
49. Licenses and Certificates for all Officers and STCW Certificates for crewmembers.
50. Voyage Data Recorder System-Certification Compliance
51. Document of Compliance
52. Safety Management Certificate
53. Main Engine Technical File
54. US Coast Guard 2692 Report and all correspondence with US Coast Guard relating to the incident.
55. Daily hold inspection reports for the voyage.
56. Ballast records for the voyage.

In addition to the foregoing documents, we hereby demand that any and all damaged lashing materials used to secure the cargo be retained indefinitely and made available for inspection.

All actions taken by us are without prejudice to the rights and defenses of those concerned.

Respectfully,

John R. Dott, NAMS-CMS
HDI MARINE

Received

Acknowledgment

Page 2 of 2

EXHIBIT "C"

# EXHIBIT "C"

## REQUESTED DOCUMENTS

1. Vessel Particulars
2. Crew List
3. Deck Logs – rough and smooth for entire voyage
4. Engine Logs – rough and smooth for entire voyage
5. Bridge Logs – rough and smooth for entire voyage
6. Chief Mate's Cargo Records for entire voyage
7. Cargo Stowage Plan for current voyage
8. Weather routing information or communications
9. Weather Reports
10. Noon position reports
11. Departure report
12. Position Log
13. Charts used from Departure Wilmington until Arrival Wilmington
14. Voyage Data Recorder electronic data from the time of departure Wilmington to the vessel's arrival at Wilmington on 1 January.
15. Bell Book and/or Data Loggers for Bridge and Engine Telegraph Orders
16. Course Recorder Records for Voyage
17. Notices of Readiness tendered at load ports
18. Statement of Facts for each load port
19. Any US Customs Service Cargo Declaration
20. Load port Stevedore / Labor Reports for load ports
21. Preloading Survey Reports
22. Lashing material inventory
23. Lashing material inspection reports
24. Lashing material record book
25. Any and all written communications to or from the Vessel relating to or made during the voyage
26. All records relating to any vessel stabilization system including operating manuals and maintenance and repair records for six month prior to the incident.
27. Any photographs taken by the crew during the voyage.
28. SMS Manuals
29. ISM Manuals
30. All maintenance and repair records related to main engine for the six month period prior to the incident.
31. All ISM non-conformity reports issued for this vessel for the past year.
33. Ships' General Arrangement Plan
34. IMO approved Cargo Securing Manual
35. Lashing Certificates
36. Voyage/Passage Plan
37. Sea Protest, if any
38. Vessel Stability Calculations, Reports and Records for Voyage (Electronic and hard copy)

PBH396668.1

STX FLAMINGO
Vessel Document List
Page 2

39. Any crew notebooks containing information related to the voyage, weather or cargo damage
40. Any video recordings taken by crew or obtained by vessel during the voyage.
41. Stowage and/or lashing inspection reports.
42. Continuous Synopsis Record
43. Load Line Certificate
44. Tonnage Certificate
45. Minimum Safe Manning Document
46. Onboard Training and Drill Records
47. Record of Navigational Activities
48. Crew Rest Records
49. Licenses and Certificates for all Officers and STCW Certificates for crewmembers.
50. Voyage Data Recorder System-Certification Compliance
51. Document of Compliance
52. Safety Management Certificate
53. Main Engine Technical File
54. US Coast Guard 2692 Report and all correspondence with US Coast Guard relating to the incident.
55. Daily hold inspection reports for the voyage.
56. Ballast records for the voyage.
57. Crew/Witness statements.
58. Written Heavy Weather Procedures.
59. List of all vessel plans and manuals.
60. Capacity Plan.
61. Trim and Stability Book.
62. Turning Circle and Maneuvering Characteristics.
63. Engine Alarm Printout for Voyage.
64. Barograph Chart for Voyage.
65. Accelerometer/Roll Recorder.
66. Inclinometer Records.
67. Arrival and Departure Checklists for Voyage.
68. Post-incident Vessel Damage Inspection Reports.
69. Post-incident Communications and Reports from Classification Society.
70. Circulars, Instructions, Bulletins regarding cargo lashing procedures on board.
71. Cargo Ship Safety Equipment Certificate.
72. Cargo Ship Safety Construction Certificate.
73. Hull, Machinery and Classification Surveys – December 31, 2012 to date.
74. Mirror Image copy of hard drives for all on-board computers for period from November 1, 2012 to date.
75. Mirror Image copy of all data from Electronic Chart Display Information System (ECDIS) for period from December 28, 2012 through January 1, 2013.
76. Mirror Image copy of all data from Integrated Bridge System (IBS) for period from December 28, 2012 through January 1, 2013.
77. Mirror Image copy of all data from Integrated Engine Room System (IRS) for period from December 28, 2012 through January 1, 2013.

STX FLAMINGO
Vessel Document List
Page 3

78. Mirror Image copy of all data from Global Positioning System (GPS) for period from December 28, 2012 through January 1, 2013.
79. Mirror Image copy of all data from Doppler Speed Log for period from December 28, 2012 through January 1, 2013.
80. Mirror Image copy of all data from Position Heading and Attitude Sensor for period from December 28, 2012 through January 1, 2013.
81. Mirror Image copy of all data from Stability Computer for period from December 26, 2012 though January 1, 2013.
82. All damaged lashing materials to be preserved indefinitely and made available for inspection.

Any and all electronically-stored data, information or communications must be preserved in its original electronic format.

EXHIBIT "D"



## PALMER
### Attorneys at Law

PHILADELPHIA | NEW JERSEY | NEW YORK | DELAWARE | MARYLAND

Michael B. McCauley
*PARTNER*
mmccauley@pbh.com
DIRECT DIAL: (215) 625-7804

January 4, 2013

Clerk of Court
U.S. District Court
844 N. King Street
4th Floor, Room 4209
Wilmington, DE 19801

      Re:   *In Re Matter of Petition of Liberty Global Logistics*
             Our File No.: 6120-336

Dear Sir/Madam:

    Pursuant to our conversation with your office this morning, this letter will confirm that in light of the fact that the vessel on which the crewmembers and documents being sought in the attached Petition will be leaving this jurisdiction on January 6, 2013, we respectfully request the attention of the Duty Judge concerning the attached Petition.

                            Very truly yours,

                            PALMER BIEZUP & HENDERSON LLP

                            By: _____
                                  Michael B. McCauley